IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICIA SMITH, | : | |
|     **Plaintiff** | : | No. 1:20-cv-00174 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| SPIRITRUST LUTHERAN, et al., | : | |
|     **Defendants** | : | |

**MEMORANDUM**

Presently before the Court are Defendants SpiriTrust Lutheran ("SpiriTrust") and Cura Hospitality ("Cura")'s motions to dismiss Plaintiff Alicia Smith ("Plaintiff")'s amended complaint (Doc. No. 26) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. Nos. 27, 29). For the reasons that follow, the motions will be granted in part and denied in part.

**I.    BACKGROUND**

    **A.    Procedural Background**

Plaintiff initiated the above-captioned action by filing a complaint in this Court on February 1, 2020. (Doc. No. 1.) Plaintiff's original complaint asserted various claims of workplace discrimination pursuant to 42 U.S.C. § 1981 (Count I), 42 U.S.C. § 1985 (Count II), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), et seq. (Count III), and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111, et seq. (Count IV) against SpiriTrust, Cura, and two individual defendants, Michelle Loucks ("Loucks") and Kevin Scritchfield ("Scritchfield"). (Id.) All Defendants subsequently filed motions to dismiss Plaintiff's complaint. (Doc. Nos. 6, 18.) On July 24, 2020, the undersigned referred Defendants' motions to Magistrate Judge Martin C. Carlson for preparation of a Report and Recommendation regarding their disposition. (Doc. No. 22.) Magistrate Judge Carlson submitted a Report and

Recommendation on October 15, 2020 in which he recommended that the motions be granted in part and denied in part. (Doc. No. 24.) Specifically, Magistrate Judge Carlson recommended that the Court: (1) dismiss all claims against Defendants Cura, Loucks, and Scritchfield; (2) dismiss Plaintiff's claims under Section 1985 and the ADA against SpiriTrust; and (3) allow Plaintiff's claims against SpiriTrust under Section 1981 and Title VII to proceed as sufficiently pleaded. (Id.) No objections were filed to the Report and Recommendation. Accordingly, the Court adopted the Report and Recommendation on November 9, 2020 without change, granting the motions to dismiss all of Plaintiff's claims with the exception of her Section 1981 and Title VII claims as asserted against SpiriTrust. (Doc. No. 25.) The Court also permitted the filing of an amended complaint. (Id.)

Plaintiff filed her amended complaint on December 3, 2020, reasserting the same claims against Cura and SpiriTrust. (Doc. No. 26.) Cura and SpiriTrust subsequently filed motions to dismiss Plaintiff's amended complaint. (Doc. Nos. 27, 29.) Having been fully briefed (Doc. Nos. 28, 30, 33-36), the motions are ripe for disposition.

    **B.**    **Factual Background**[1]

Plaintiff is a "disabled African-American female who resides in Lancaster County, Pennsylvania." (Doc. No. 26-1 ¶ 4.) Plaintiff alleges that at all times relevant to her claims, Cura was under contract to provide food services for residents at The Village at Shrewsbury ("SL-Shrewsbury"), a SpiriTrust retirement living community. (Id. ¶¶ 5, 7.) Plaintiff further alleges that during the course of her employment at SL-Shrewsbury: (1) "Keith (last name unknown) was the highest level Cura employee at SL-Shrewsbury" (id. ¶ 8); (2) Scritchfield

---

[1] The following factual background is taken from the allegations of Plaintiff's amended complaint. (Doc. No. 26-1.)

2

was employed by Cura as the supervisor of the Kitchen Department at SL-Shrewsbury and reported to Keith (id. ¶ 9); and (3) Barry Wertz was employed by Cura as "Director and/or Department Manager of Dining Services" at SL-Shrewsbury and reported to Scritchfield (id. ¶ 10).

Plaintiff asserts that she was interviewed by Keith for a position at SL-Shrewsbury in March 2019 and was ultimately hired by SL-Shrewsbury to work in the Kitchen Department on April 4, 2019. (Id. ¶¶ 12-13.) Further, she notes that "[o]n April 24, 2019, Cura Manager Barry Wertz signed off on SpiriTrust's Payroll Authorization Form as 'Department Director' for Plaintiff's job title, pay rate, and employment status" as well as "Plaintiff's Job Description and Acknowledgment." (Id. ¶¶ 14-15.) During the course of Plaintiff's employment, the Kitchen Department at SL-Shrewsbury had approximately twenty-one (21) employees, of which Plaintiff was the only African-American. (Id. ¶¶ 16-17.)

Plaintiff alleges that shortly after her employment with SpiriTrust began, she began experiencing differential treatment from her co-workers, which she claims was due to her race. (Id. ¶ 19.) To this end, Plaintiff details numerous incidents that she categorizes as evidence of an ongoing pattern of discrimination. First, Plaintiff alleges that on or about May 31, 2019, while she was serving residents, a Caucasian female coworker, Bree McCraven ("McCraven"), told Plaintiff to "go the long way through the dishwashing area to get to the refrigerator" and "used her body and a food cart to purposely block Plaintiff's access [to the kitchen]" in addition to "repeatedly yell[ing] at Plaintiff." (Id. ¶¶ 20, 22.) Plaintiff allegedly agreed to the demand, "but added that she would discuss the matter with Scritchfield," who was not present that day, at which time the Acting Director Dana Chester ("Chester"), "quickly intervened to further bully Plaintiff." (Id. ¶¶ 25-26.) Plaintiff alleges that McCraven "used her left shoulder

3

to purposely and forcefully hit Plaintiff as they passed each other" later that same day.  (Id. ¶ 27.)

In the next incident forming the basis of Plaintiff's claims, which occurred on or about June 2, 2019, another coworker, Todd Bond ("Bond"), allegedly used a highly offensive racial slur against Plaintiff, telling her to "Shut up [slur]."  (Id. ¶ 28.)  Plaintiff claims that the use of the slur was part of a broader pattern of attacks from Bond, who "often yelled at Plaintiff and accused her of making mistakes."  (Id. ¶ 29.)  Plaintiff alleges that she complained to Scritchfield about Bond, as well as McCraven and Chester, on June 3, 2019.  (Id. ¶ 30.)  During the course of this conversation, Plaintiff asserts that she informed Scritchfield that she suffered a stroke two years previously and was concerned about the treatment from her coworkers because "she could not defend herself if physically attacked."  (Id. ¶¶ 31-32.)  Scritchfield allegedly accompanied Plaintiff to the kitchen to confront Bond about calling Plaintiff a racial slur; however, "[w]hen Plaintiff questioned Bond, Supervisor Scritchfield pulled Plaintiff away before Bond could answer and said: 'Be easy on him . . . he can't see,'" after which Scritchfield walked away.  (Id. ¶¶ 34-35, 37.)  Plaintiff alleges that Scritchfield dismissed other complaints about racial discrimination, stating only that he would "have to conduct an investigation."  (Id. ¶ 39.)  Plaintiff states that, despite this comment, "weeks went by with no response to Plaintiff's claims and no resolution or remediation of the ongoing racial discrimination against Plaintiff."  (Id.)

Plaintiff next asserts that, on or about June 24, 2019, she was clearing dishes from the dining room and residents' rooms and wheeling carts with dirty dinner trays to the kitchen when "Chester began screaming at Plaintiff, demanding to know where Plaintiff had been."  (Id. ¶ 42.)  After Plaintiff explained that she was gathering trays, Chester "continued yelling and

berating Plaintiff," after which Chester allegedly "took four other employees into a room and they closed the door," leaving Plaintiff alone in the kitchen. (Id. ¶¶ 44-45.) When Plaintiff reported this incident, "Scritchfield again put Plaintiff off by saying that he would have to conduct another investigation." (Id. ¶ 47.) Plaintiff asserts that "[i]n response to Plaintiff's complaint about Chester's misconduct on June 24th, Executive Director Loucks and Scritchfield signed off and issued Plaintiff a Corrective Action/Final Warning" with the "false allegation" that Plaintiff had sworn at Chester. (Id. ¶ 48.) With respect to this disciplinary action, Plaintiff alleges that she "was singled out for discipline even though she has heard other staff use the F-word." (Id. ¶ 51.) Further, Plaintiff alleges that she pressed Scritchfield about the results of her original complaints against Bond, McCraven, and Chester, but was advised that Scritchfield "found no wrongdoing on their part." (Id. ¶ 52.)

On June 26, 2019, Plaintiff tripped over a box that was left on the kitchen floor and suffered injuries, including a sprained back and neck. (Id. ¶¶ 53-54.) Plaintiff asserts that the harassment from her coworkers continued when she returned to work on June 28, 2019. (Id. ¶ 55.) Specifically, Plaintiff states that when she would enter the building at the start of her shifts, "Executive Director Loucks and others would surround her, follow her into the kitchen, and ask her questions" (id. ¶ 58) and that, on one occasion, "Manager Kathy Fanus used her fist and purposely hit Plaintiff in her injured shoulder, knowing of Plaintiff's injury" (id. ¶ 59).

Plaintiff alleges that, on or about July 2, 2019, she submitted medical documentation to Human Resources that set forth the residual effects that Plaintiff experiences as a result of her prior stroke, including memory loss. (Id. ¶ 61.) She asserts that Loucks "began to repeatedly call Plaintiff into her office for seemingly trivial issues." (Id. ¶ 62.) On July 12, 2019, Barry Wertz signed a Temporary Transitional Assignment Form, which "did not change [Plaintiff's]

5

essential duties, but simply made minor changes to comply with the medical restrictions imposed as a result of Plaintiff's workplace accident." (Id. ¶ 56.) On July 15, 2019, Scritchfield called Plaintiff into his office and advised her that she was being reassigned to the Nursing Department to wash and disinfect wheelchairs. (Id. ¶¶ 63, 65.) Plaintiff alleges that Scritchfield insisted that Plaintiff immediately sign a new Temporary Transitional Assignment to this effect, but that she was unprepared to do so because she needed time to review it. (Id. ¶ 64.) When Plaintiff refused to sign the Temporary Transitional Assignment immediately, Scritchfield allegedly ordered Plaintiff to "clock out and go home" and Plaintiff's pay was docked accordingly. (Id. ¶ 69, 71.)

In addition to the aforementioned incidents, Plaintiff alleges that "Defendants would remove Plaintiff from the work schedule and then—without informing Plaintiff—would put her back on the schedule, said action purposely designed to set Plaintiff up for disciplinary action" and "repeatedly reduced Plaintiff's work hours, even though they were short staffed." (Id. ¶¶ 73-74.) She asserts that she "complained to Sara Sprenkle, [SpiriTrust]'s Corporate Human Resources Director, but nothing was ever done to remediate the racial harassment against Plaintiff." (Id. ¶ 72.) Plaintiff resigned on August 6, 2019, which she alleges amounted to a constructive discharge after Defendants' "ongoing discrimination and retaliation escalated to an intolerable point." (Id. ¶ 76.)

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and

all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions set forth as factual allegations.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6):  (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## III. DISCUSSION[2]

### A. Cura's Status as a Joint Employer

The Court previously determined that Plaintiff's claims against Cura were deficient because Plaintiff failed to allege facts that would give rise to an inference that she had an employment or contractual relationship with Cura. (Doc. No. 24 at 29.) Specifically, the Court noted that "[d]espite the fact that [Plaintiff]'s complaint appears to clearly identify SpiriTrust as her employer, she still seeks to hold Cura and SpiriTrust jointly liable for [her claims] on the basis of a theory that is not clearly articulated in her complaint." (Id.) Accordingly, before turning to the merits of Plaintiff's claims, the Court will consider whether Plaintiff's amended complaint contains sufficient allegations to support holding Cura liable as a joint employer.

#### 1. Applicable Legal Standard

To state a claim under Title VII or the ADA, a plaintiff must allege facts supporting the existence of an employment relationship with the defendant. See Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013) (stating that "[i]n order to state a Title VII claim, [plaintiff] must allege an employment relationship with the defendants"); see also (Doc. No. 24 at 39) (noting that "facts showing that Cura was [Plaintiff]'s employer" are a "prerequisite to liability under the ADA"). Claims of employment discrimination brought

---

[2] Plaintiff concedes in briefing the instant motions that her claim for conspiracy (Count II) against both Cura and SpiriTrust should be dismissed. (Doc. No. 33 at 10 n.1; Doc. No. 34 at 9 n.1.) Accordingly, the Court will dismiss Count II of Plaintiff's amended complaint with prejudice.

8

pursuant to 42 U.S.C. § 1981 are analyzed under the same framework applied to Title VII claims. See Grigsby v. Kane, 157 F. App'x 539, 543 (3d Cir. 2005) (noting that "the applicable legal framework [for Section 1981 employment discrimination claims] was set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)").

In determining whether an employment relationship existed between a plaintiff and a defendant, courts consider the level of control the defendant exerted over the plaintiff by examining a number of factors, including, but not limited to: (1) which entity paid the plaintiff's salary; (2) which entity hired and fired the plaintiff; and (3) which entity had control over daily employment activities. See Covington, 710 F.3d at 119. However, although these factors are instructive, the Third Circuit has advised that "[a] determination as to whether a defendant is a joint employer must be based on a consideration of the total employment situation and the economic realities of the work relationship." See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012) (internal citation omitted).

### 2. Arguments of the Parties

Cura argues in its renewed motion to dismiss that Plaintiff has included no additional information in her amended complaint that would allow the Court to find that Cura had an employment relationship with Plaintiff beyond "conclusory labels." (Doc. No. 28 at 8.) Specifically, Cura argues that Plaintiff's amended complaint "includes no facts addressing Cura's authority (if any) to promulgate work rules and assignments or to set Plaintiff's conditions of employment." (Id.) (internal citation omitted). Further, Cura asserts that Plaintiff "includes only barebones allegations concerning Cura's authority (if any) relative to daily supervision over, or discipline of, SL employees." (Id.) In response, Plaintiff notes that she alleges in the amended complaint that Cura employees interviewed her for her position and

9

signed off on employment authorization documents, including payroll forms and the Temporary Transitional Assignment Form that modified Plaintiff's duties in compliance with medical restrictions following her workplace accident, as well as the fact that Scritchfield was responsible for conducting investigations related to discipline and discrimination claims and that he jointly issued Plaintiff a Corrective Action/Warning alongside SpiriTrust employee Loucks. (Doc. No. 34 at 12.) Accordingly, Plaintiff argues that she has sufficiently alleged that Cura exercised enough control over the conditions of her employment to be deemed a joint employer. (Id. at 13.)

### 3. Whether the Court Should Find that Cura and SpiriTrust are Joint Employers

Upon review of Plaintiff's amended complaint, the parties' arguments, and the applicable law, the Court finds that Plaintiff has sufficiently alleged the existence of a joint employment relationship with Cura. Although Plaintiff alleges that her specific contract was with SpiriTrust, Plaintiff also alleges other facts that support a finding that Cura was a joint employer. Specifically, Plaintiff avers that: (1) she was interviewed for the position by the highest level Cura employee at SL-Shrewsbury (Doc. No. 26-1 ¶¶ 8, 12); (2) SpiriTrust's payroll authorization forms setting her job title, pay rate, and employment status, as well as forms detailing her job description were signed by Cura Manager Barry Wertz as the "Department Director" (id. ¶¶ 10, 14-15); (3) Plaintiff reported to Cura employee Scritchfield who was responsible for conducting investigations into Plaintiff's complaints of discrimination and Plaintiff's workplace accident (id. ¶¶ 9, 25, 30-35, 39, 47, 52, 57); (4) Scritchfield and Loucks jointly issued and signed off on disciplinary action for Plaintiff (id. ¶ 48); (5) Barry Wertz signed off on forms authorizing changes to Plaintiff's work assignments as a result of medical restrictions (id. ¶ 56); and (6) Scritchfield advised Plaintiff of her reassignment to the nursing department, provided her with a

new contract, and directed Plaintiff to "sign the document immediately or clock out and go home" (id. ¶¶ 63, 69). Viewing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately pleaded that Cura, through its direct employees, exercised sufficient control over Plaintiff's employment to be viewed as a joint employer. In particular, the Court finds it notable that Cura employees and SpiriTrust employees were jointly responsible for conducting investigations into workplace misconduct and accidents, employee discipline, and signing off on temporary disability-related accommodations. See Enterprise, 683 F.3d at 469 (noting that it is relevant if an alleged employer has "authority to promulgate work rules and assignments [] and set conditions of employment" and exercises "day-to-day supervision, including employee discipline"). Accordingly, the Court turns to the merits of Plaintiff's claims.

### B. Plaintiff's Claims of Race Discrimination Pursuant to Section 1981 (Count I) and Title VII (Count III)[3]

#### 1. Applicable Legal Standards

Title VII designates that it is an unlawful employment practice for an employer to "discharge . . . or . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" See 42 U.S. C. § 2000e-2(a)(1). A discrimination claim under Title VII may be based on allegations that the work environment was "hostile" where the plaintiff can show that a workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" See Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78 (1998) (internal

---

[3] The Court addresses Plaintiff's Section 1981 and Title VII claims together because the same analysis applies to each claim. See Castleberry v. STI Grp., 863, F.3d 259, 263 (3d Cir. 2017).

citation omitted). Similarly, Section 1981 also provides a remedy for racial discrimination in private employment. See Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 459-60 (1975). As noted, supra, analysis of race discrimination claims under Section 1981 parallels the analysis employed for the assessment of Title VII claims. See Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) (noting that "the substantive elements of a claim under [S]ection 1981 are generally identical to the elements of an employment discrimination claim under Title VII").

In order to state a Title VII claim on the basis of a hostile work environment, a plaintiff must show that: "(1) [she] suffered intentional discrimination because of [race]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person [of the same race] in that position; and (5) the existence of [a basis for] liability. See Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009). With respect to the final factor, "[i]n order to hold the employer liable for the conduct of a plaintiff's coworkers, the plaintiff must establish that the employer was aware of the problem and failed to take prompt and appropriate corrective action." See Syed v. YWCA of Hanover, 906 F. Supp. 2d 345, 358 (M.D. Pa 2012). A plaintiff may also state a claim for retaliation under Title VII by alleging that: "(1) she engaged in a protected activity[;] (2) she suffered an adverse employment action[;] and (3) there was a causal connection between the participation in the protected activity and the adverse action." See Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017).

## 2. Arguments of the Parties[4]

Cura's primary argument in support of dismissal of Plaintiff's Title VII and Section 1981 claims is that Plaintiff has failed to sufficiently allege an employment or contractual relationship with Cura. (Doc. No. 28 at 7-9.) However, in the alternative, Cura argues that Plaintiff has nonetheless failed to "identify any basis to hold Cura liable for the harassment allegedly committed by employees of SL" or "identify any actionable adverse employment action on the part of Cura." (Id. at 10.) In response, Plaintiff argues that Cura, through Scritchfield, had authority over the employees who harassed Plaintiff and yet consistently did nothing to remedy Plaintiff's complaints of discrimination. (Doc. No. 34 at 16-17.) Plaintiff notes that "even though Plaintiff was an SL-Shrewsbury employee, Scritchfield was apparently charged with the responsibility to conduct the investigation [into her complaints of racial discrimination] on behalf of SL-Shrewsbury" and asserts that "Scritchfield's actions and inactions condoned the racism that permeated the Kitchen Department." (Id. at 17-18.) Further, Plaintiff argues that her amended complaint indicates that Cura retaliated against her for making complaints by disciplining her, but not other employees. (Id. at 17.)

## 3. Whether the Court Should Dismiss Plaintiff's Section 1981 and Title VII Claims

As an initial matter, the Court notes that SpiriTrust seeks to dismiss all claims against it in Plaintiff's first amended complaint. However, Magistrate Judge Carlson's October 15, 2020 Report and Recommendation (Doc. No. 24) and the Court's Order of November 9, 2020 adopting the same (Doc. No. 25) specifically denied SpiriTrust's motion to dismiss Plaintiff's claims against it pursuant to 42 U.S.C. § 1981 (Count I) and Title VII (Count III). SpiriTrust

---

[4] For reasons discussed infra, the Court will only refer to Cura's arguments regarding the dismissal of these claims.

filed no objections to Magistrate Judge Carlson's Report and Recommendation, nor does SpiriTrust argue in the instant motion that the Court's prior disposition of these claims was in error. Instead, SpiriTrust only reiterates almost verbatim the same arguments the Court previously rejected. (Doc. No. 30 at 8-16.) The Court's review of Plaintiff's amended complaint does not indicate any basis for altering its prior analysis of the sufficiency of Plaintiff's Section 1981 and Title VII claims against SpiriTrust. See, e.g., Minard Run Oil Co. v. U.S. Forest Service, 549 F. App'x 93, 98 (3d Cir. 2013) (noting that where a court has already resolved a legal question, that resolution becomes law of the case and will not be revisited unless "(1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice"). Accordingly, the Court will deny SpiriTrust's renewed motion to dismiss insofar as it seeks dismissal of Counts I and III of Plaintiff's amended complaint and will consider only whether Plaintiff's amended complaint has addressed the deficiencies that warranted dismissal of these claims against Cura.[5]

As Magistrate Judge Carlson observed in his Report and Recommendation:

> Read in a liberal fashion, our review of the factual narrative in the complaint in this case reveals a pattern of alleged antagonism, coupled with one isolated overtly racist statement, and allegations that some supervisors tacitly condoned the racist remark by refusing to condemn it and, instead, punishing [Plaintiff] for her own allegedly intemperate behavior. . . . Liberally construed, [Plaintiff]'s complaint appears to assert that her co-workers created a hostile work environment. Further, after she alleges that she complained to Scritchfield and other managers about alleged racial discrimination in her work environment, the complaint can be construed as

---

[5] SpiriTrust also seeks to dismiss Plaintiff's request for punitive damages. The Court notes that SpiriTrust does not dispute that punitive damages are an available remedy in Title VII and Section 1981 cases (Doc. No. 30 at 22), but rather asserts that Plaintiff's amended complaint does not "support [her] allegations of punitive damages" (id.). However, because "an inquiry into the availability of punitive damages and the intent behind a defendant's conduct is inherently fact-specific," see Judge v. Shikellamy Sch. Dist., 135 F. Supp. 3d 284, 300 (M.D. Pa. 2015), the Court will not determine at this stage of proceedings whether Plaintiff is entitled to request punitive damages.

asserting that managers disciplined her, tacitly condoned the conduct of others, and transferred her to another, less desirable work assignment. Taken together, these allegations may be legally sufficient to state Title VII discrimination and retaliation claims.

(Doc. No. 24 at 28.) With respect to Cura specifically, the Court acknowledged that "much of the conduct which [Plaintiff] found offensive seems to be attributed to Cura employees, although liberally construed it also appears that [Plaintiff] is alleging that SpiriTrust allowed these offensive conditions to persist." (Id. at 29.) Indeed, the Court's prior dismissal of Plaintiff's Title VII claim against Cura was not based on a finding that Plaintiff failed to allege a racially hostile work environment or retaliation attributable to Cura employees, but rather, was specifically because the Court determined that Plaintiff's complaint "[did] not adequately allege an employment relationship with Cura." (Id. at 30.) Based on the Court's finding, supra, that Plaintiff's amended complaint sufficiently alleges that Cura was Plaintiff's joint employer, coupled with Plaintiff's extensive allegations regarding the involvement of Cura employees in the alleged racial discrimination, the Court now determines that Plaintiff's amended complaint sufficiently states both Title VII and Section 1981 claims against Cura.[6]

### C. Plaintiff's ADA Claims (Count IV)

#### 1. Applicable Legal Standard

In order to state a claim for discrimination under the ADA, Plaintiff must allege facts sufficient to demonstrate that she: "(1) is disabled [within the meaning of the ADA][;] (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable

---

[6] Cura's argument that Plaintiff nonetheless has not alleged a contractual relationship with Cura in support of a Section 1981 claim is unavailing in light of the Court's determination that Plaintiff sufficiently alleged that Cura was Plaintiff's joint employer. See, e.g., Anderson v. Finley Catering Co., Inc., 218 F. Supp. 3d 417, 423 (2016) (declining to dismiss Title VII and Section 1981 claims where the plaintiff sufficiently alleged that the defendant companies were joint employers).

accommodations by the employer[;] and (3) has suffered an adverse employment action as a result of [her] disability." See Stadtmiller v. UPMC Health Plan, Inc., 491 F. App'x 334, 336 (3d Cir. 2012). The ADA allows a plaintiff to bring a claim for retaliation, in support of which a plaintiff must allege facts demonstrating: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal relationship between the protected activity and the employer's adverse action." See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).

### 2. Arguments of the Parties

In support of dismissal, Cura and SpiriTrust argue that Plaintiff's amended complaint fails to rectify the deficiencies previously identified by the Court with respect to Plaintiff's ADA claims. (Doc. No. 28 at 14; Doc. No. 30 at 16.) Specifically, Defendants assert that it remains unclear which disabilities form the basis of Plaintiff's ADA claims or what actions Defendants took or failed to take that would give rise to liability under the ADA. (Doc. No. 28 at 14-16; Doc. No. 30 at 16-19.) In response, Plaintiff asserts that her complaint of disability discrimination "is based on the residual effects that she suffers as a result of a stroke," that she "was wrongfully treated when she was called into Scritchfield's office [] to immediately sign a Temporary Transitional Assignment Form," and that her proposed reassignment to the nursing department constitutes an adverse employment action for purposes of her ADA claims. (Doc. No. 33 at 12, 14; Doc No. 34 at 18.)

### 3. Whether the Court Should Dismiss Plaintiff's ADA Claims

Upon review of Plaintiff's amended complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiff's ADA claims. Plaintiff's amended allegations in support of any ADA claims are almost identical to the allegations in the original complaint. As Magistrate

Judge Carlson noted while recommending dismissal of Plaintiff's ADA claims as originally pleaded:

> First, it is unclear what disabilities [Plaintiff] is asserting since at various times she refers to either workplace injuries suffered in late June 2019 or the lingering effects of a stroke which she had previously experienced. (Doc. 1, ¶¶ 46-52). Further, it is apparent from [Plaintiff]'s complaint that neither of these conditions was known to the defendants prior to late June and early July 2019, shortly before [Plaintiff] resigned. Therefore, these conditions may not form the basis for any ADA claim prior to the time when the defendants are placed on notice of [Plaintiff]'s disabilities. Moreover, with respect to her June 2019 workplace injury, it appears from [Plaintiff]'s complaint that her employer actually engaged in an interactive process designed to accommodate her physical limitations by providing her with a different, less physically-demanding duty assignment. Since a reassignment may constitute a reasonable accommodation, the facts pleaded by [Plaintiff] do not clearly state an ADA claim against SpiriTrust in this regard. See Shiring v. Runyon, 90 F.3d 827, 830 (3d Cir. 1996). While [Plaintiff] alleges that, during this interactive process she was questioned about her ability to read—a remark which she viewed as discriminatory—it is well-settled that "'stray' remarks or an isolated comment are insufficient to establish discrimination." Lincoln v. Momentum Sys. Ltd., 86 F. Supp. 2d 421, 432 (D.N.J. 2000). Thus, this single remark, made at a time when the complaint alleges that efforts were being made to accommodate her injury, does not suffice to save this ADA claim.

(Doc. No. 24 at 38-39.) Plaintiff has failed to allege any additional facts in her amended complaint clarifying what disabilities she alleges formed the basis for any discrimination, nor has she pleaded facts that would allow the Court to infer that her proposed reassignment was discriminatory or retaliatory in nature and not a reasonable accommodation for her workplace injury. Although Plaintiff asserts in briefing that her ADA claims are based on residual impacts of her prior stroke, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (internal citation omitted). Further, Plaintiff's amended complaint includes no allegations that she ever specifically requested accommodations based on any

17

alleged disability. Accordingly, the Court will grant Defendants' motions to dismiss Plaintiff's ADA claim (Count IV) with prejudice.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss (Doc. Nos. 27, 29) in part and dismiss Counts II and IV of Plaintiff's amended complaint. As to Plaintiff's claims pursuant to Section 1981 (Count I) and Title VII (Count III), Defendants' motions will be denied. An appropriate Order follows.

---

[7] District courts must generally extend plaintiffs an opportunity to amend a complaint before dismissal in civil rights cases. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). However, a court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." See Foman v. Davis, 371 U.S. 178, 182 (1962). In the present case, Plaintiff was put on notice of the deficiencies present in her complaint by the Court's prior dismissal (Doc. Nos. 24, 25), was previously granted leave to amend, and nonetheless failed to plead any additional facts to support her ADA claims. Accordingly, the Court finds no reason to allow further amendment of these claims and will dismiss Count IV of Plaintiff's amended complaint with prejudice.